UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

RONDA S. HELTON,                          )
                                          )
              Plaintiff,                  )
                                          )
v.                                        )        No. 2:19-CV-222-HBG
                                          )
ANDREW M. SAUL,                           )
Acting Commissioner of Social Security,   )
                                          )
              Defendant.                  )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 18].

Now before the Court is Plaintiff's Motion for Judgment on the Pleadings and

Memorandum in Support [Docs. 19 & 20] and Defendant's Motion for Summary Judgment and

Memorandum in Support [Docs. 21 & 22].   Ronda S. Helton ("Plaintiff") seeks judicial review of

the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew

M. Saul ("the Commissioner").   For the reasons that follow, the Court will **GRANT IN PART**

Plaintiff's motion and **DENY** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

Plaintiff previously filed an application for disability insurance benefits and supplemental

security income pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*

and 1381 *et seq.*, on March 15, 2013.   [Tr. 183–90].   Plaintiff's claims were denied initially and

on reconsideration, and a hearing was held before ALJ S.D. Schwartzberg on August 8, 2015.   [Tr.

38–59].   ALJ Schwartzberg found that Plaintiff was not disabled on August 17, 2015.   [Tr. 16–

37].   After Plaintiff commenced a civil action in this Court, Magistrate Judge Clifton Corker issued

an order remanding Plaintiff's claim to the Commissioner for further consideration on September 22, 2017. *See Helton v. Comm'r of Soc. Sec. Admin.*, No. 2:16-cv-286-MCLC (E.D. Tenn. Sept. 22, 2017) [Docs. 23–24]. The Appeals Council remanded this claim to the ALJ on March 5, 2018. [Tr. 725–29]. ALJ Schwartzberg held an additional hearing on July 27, 2018, wherein Plaintiff amended her alleged onset disability date to January 8, 2013. [Tr. 637–55]. On October 2, 2018, the ALJ again found that Plaintiff was not disabled. [Tr. 609–625]. On September 17, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. [Tr. 599–605].

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on December 18, 2019, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2017.

2. The claimant has not engaged in substantial gainful activity since January 8, 2013, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: mild degenerative disc and facet disease of the lumbar spine; mild osteoarthritis in the right hip and joint; arthritis; obesity; diabetes mellitus; carpal tunnel syndrome; depression; anxiety; posttraumatic stress disorder; and unspecified personality disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1

2

(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasional postural activities but no climbing ladders, ropes, or scaffolds; she is limited to frequent handling and fingering bilaterally; she should avoid even moderate exposure to hazards; and she is limited to simple, routine, repetitive tasks with occasional contact with co-workers, supervisors, and the public (basically better with things than people).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 19, 1965 and was 47 years old, which is defined as a younger individual age 18-40, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 8, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 611–625].

## III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

4

than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record."  20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e).  An RFC is the most a claimant can do despite his limitations.  20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

5

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.     ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards.[1] While Plaintiff has set forth numerous allegations of error in her Memorandum in Support of her Motion for Judgment on the Pleadings [Doc. 20], the Court finds it appropriate to first address her arguments as whether substantial evidence supports the ALJ's determination of Plaintiff's mental and physical RFC.

### A.     ALJ's Mental RFC Determination

#### 1.     Medical Record and Previous Order of Remand

Plaintiff submits that "none of the opinion medical evidence" in the medical record supports the ALJ's RFC determination "from a mental standpoint." [*Id.* at 13]. Plaintiff notes that the RFC includes limitations to simple, routine, repetitive job tasks with occasional contact with co-workers and the public, and proceeds to review the medical opinions of record.

Prior to remand, nonexamining state agency psychologist Rebecca Hansmann, Psy.D., reviewed the evidence of record at the initial level of the agency's review on July 22, 2013. [Tr. 115, 129]. Dr. Hansmann reviewed Plaintiff's understanding and memory, sustained concentration

---

[1] The Court cautions Plaintiff's counsel that the organization of his brief has made it difficult for the Court to discern the relevant arguments, as the Court was forced to parse through Plaintiff's Memorandum in order to uncover specific allegations of error. A similar structure of future briefing could potentially lead to allegations of error being dismissed as underdeveloped.

and persistence, social interaction, and adaption limitations. Dr. Hansmann then opined that Plaintiff could understand and remember simple and multi-level detailed tasks, but could not make independent decisions at an executive level; that she could concentrate and persist for the detailed tasks for an eight-hour day with routine breaks, within the described restrictions; that she could interact with the public, coworkers, and supervisors, within the above-applied restrictions, and would work better with things than with people; and that Plaintiff could adapt to infrequent change and set goals, within the above-applied restrictions. [*Id.*]. The ALJ reviewed Dr. Hansmann's opinion and "accept[ed] her opinion as [it] is generally consistent with the above residual functional capacity," as well as that "a review of the documentary evidence warrants the above residual functional capacity." [Tr. 621].

Additionally, nonexamining state agency psychologist P. Jeffrey Wright, Ph.D., reviewed the evidence of record at the reconsideration level of the agency's review on April 24, 2014. [Tr. 80, 98]. Dr. Wright also reviewed Plaintiff's understanding and memory, sustained concentration and persistence, social interaction, and adaption limitations. Accordingly, Dr. Wright opined that Plaintiff could understand and remember simple and multi-level detailed tasks but could not make independent decisions at an executive level; that she could not complete a normal work week without interference from mental health signs and symptoms; that she could interact with the public, coworkers, and supervisors within the applied restrictions, but that she would work better with things than with people; and that Plaintiff could adapt to infrequent change and set goals, within the applied restrictions. [*Id.*].

In the disability decision, the ALJ reviewed Dr. Wright's opinion and afforded it "some weight as it is generally consistent with the above residual functional capacity." [Tr. 620]. However, the ALJ found that Dr. Wright's opined marked limitations in the ability to complete a

7

normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was "not supported by the treatment records" that were available to Dr. Wright at the time of his opinion. [*Id.*]. The ALJ detailed that Plaintiff was admitted to the Crisis Stabilization Unit and started on medications in February of 2013, that she followed up with Frontier Mental Health "and their records show that the claimant appeared much improved on medications when last seen in September 2013." [Tr. 620–21].

The ALJ also considered the opinion of Plaintiff's treating counselor, Gerry Livermore, LCSW, from September 10, 2014, who, in a one-page letter, noted that Plaintiff had been treated at Hawkins County Mental Health since February 14, 2013; that she received case management, individual therapy, and medication management services; and that Plaintiff "is not able to work at this time due to [symptoms] of Major Depressive Disorder and PTSD." [Tr. 314]. The ALJ afforded this opinion little weight, as it was too restrictive and not supported by Ms. Livermore's treatment records or the medical record at that time. [Tr. 621]. The ALJ noted that Ms. Livermore saw Plaintiff for individual therapy from February 2013 through April 2014, that she noted that Plaintiff had situational stressors and was working on developing coping skills, but that treatment records from Frontier Health reflect that Plaintiff was "much improved on medications at that time." [*Id.*]. Additionally, the ALJ found that Ms. Livermore's statement that a claimant is disabled is not a proper medical opinion, as such issues are reserved to the Commissioner under Social Security Ruling 96-5p. [*Id.*].

Plaintiff received a consultative psychological evaluation from Wade Smith, MS, SPE, on April 10, 2014. [Tr. 475–80].[2] Mr. Smith performed a clinical interview and reviewed Plaintiff's personal and family history, academic and vocational history, activities of daily living, and medical and mental health history, and performed a mental status exam. [Tr. 475]. Mr. Smith diagnosed major depressive disorder, single episode, moderate; unspecified trauma and stressor related disorder; other anxiety disorder, no persistent concern or maladaptive behavioral change; and unspecified personality disorder with Cluster C traits. [Tr. 478]. Mr. Smith opined that Plaintiff appeared to be mildly to moderately limited in her ability to understand and remember general items and concepts, but that it was reasonable to expect that she should be able to comprehend and follow both simple and some detailed job instructions. [*Id.*]. Additionally, Mr. Smith found that Plaintiff's concentration and persistence appeared markedly impaired by depression and anxiety, and "are probably inadequate to meet the demands of even simple work-related decisions in a reliable fashion." [*Id.*]. Mr. Smith noted that Plaintiff showed a moderately impaired ability to interact with others in an appropriate manner; seemed capable of managing her own hygiene; and appeared to be moderately limited in her ability to adapt to changes in the workplace, be aware of normal hazards, and to take appropriate precaution. [*Id.*]. Lastly, Mr. Smith opined that Plaintiff's physical and psychological problems may detract from her ability to maintain attendance and meet an employment schedule. [*Id.*].

The ALJ reviewed Mr. Smith's opinion and afforded it some weight, finding that the opinion was "partially consistent with the above residual functional capacity." [Tr. 621]. The ALJ found that Mr. Smith's assessed limitations on Plaintiff's concentration and persistence, including

---

[2] Mr. Smith, a licensed senior psychological examiner, was supervised by David Dietrich, Ph.D., a licensed clinical psychologist. [Tr. 478].

that she was probably unable to meet the demands of even simple work-related decisions, are "not supported by his own narrative report or with the treatment records at that time." [*Id.*]. Specifically, the ALJ reviewed that Mr. Smith reported that Plaintiff's attention appeared intact, as well as that her concentration for short-term tasks was limited, but that she was alert and oriented times three. [*Id.*]. The ALJ then proceeded to review the inconsistent findings of Mr. Smith's mental status exam, including, for example, that Plaintiff was able to complete six sequences of a serial threes task without error. [*Id.*]. Additionally, the ALJ noted that Mr. Smith stated that Plaintiff's recent and remote memories appeared intact, that numerical reasoning was accurate, and visuospatial ability was within normal limits. [*Id.*].

The ALJ then detailed how Plaintiff's treatment records from Frontier Mental Health demonstrate how Plaintiff "appeared much improved on medications when last seen in September 2013 for medication management." [*Id.*]. The ALJ noted that Plaintiff did not report for medication management until after Mr. Smith's evaluation, as well as that treatment records indicate that Plaintiff was not compliant with her medications at that time. [Tr. 621–22]. Further, the ALJ detailed that when Plaintiff was seen for medication management on April 28, 2014, she was oriented in all spheres, calm, and cooperative; that she was appropriate in behavior and mannerisms; her short and long-term memory were intact; and that she conversed easily and actively participated in treatment discussions and decisions. [Tr. 622].

After reviewing the treatment records from Plaintiff's April 28th appointment in greater detail, the ALJ again stated that Mr. Smith's opinion regarding marked limitations in concentration and persistence were not supported by his narrative report or Plaintiff's treatment records at Frontier Mental Health. [*Id.*]. Additionally, the ALJ detailed that while Mr. Smith noted that Plaintiff's "physical and psychological problems may detract from her ability to maintain

10

attendance and meet an employment schedule . . . the claimant's physical problems is an area outside of Mr. Smith's expertise and that . . . is not supported by the evidence of record." [*Id.*].

Brenda Ford, MA, completed two medical source statements on July 22, 2015. When reviewing Plaintiff's mental abilities and aptitudes, Ms. Ford found that Plaintiff was unlimited or very good in the ability to get along with coworkers or peers without unduly distracting them and being award of normal hazards and taking appropriate precautions, adhere to basic standards of neatness and cleanliness, and use public transportation. [Tr. 588–89]. Ms. Ford opined that Plaintiff was limited but satisfactory in the ability to understand and remember very short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, ask simple questions or request assistance, and maintain socially appropriate behavior. [*Id.*]. Additionally, Ms. Ford found that Plaintiff was seriously limited, but not precluded, in the ability to maintain regular attendance and be punctual; work in coordination with or in proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; understand, remember, and carry out detailed instructions; and set realistic goals or make plans independently of others. [*Id.*]. Lastly, Ms. Ford opined that Plaintiff was unable to meet competitive standards in the ability to remember work-like procedures, maintain attention for a two-hour segment, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors and changes in a routine work setting, deal with normal work stress, and deal with stress of semiskilled and skilled work. [*Id.*].

In her first Medical Source Statement, Ms. Ford noted that Plaintiff "experiences distraction and memory problems that would interfere [with] concentration and understanding instructions," that "her PTSD symptoms would likely be triggered in a workplace similar to where

11

[the] robbery[3] took place," as well as that "her depression symptoms flare often and would cause absenteeism." [Tr. 588]. Moreover, Ms. Ford stated that Plaintiff's anxiety and PTSD "are often triggered in interaction[s] with others," as "she is not confident in navigating in unfamiliar places." [Tr. 589]. Lastly, Ms. Ford detailed that Plaintiff "does not go away from home due to anxiety and wanting to avoid PTSD triggers," and opined that Plaintiff's impairments and treatment would cause her to be absent from work more than four days per month. [*Id.*].

In her second Medical Source Statement, Ms. Ford opined that Plaintiff was mildly limited in her ability to carry out simple instructions, but that she was markedly limited in the ability to understand and remember simple and complex instructions, make judgments on simple work-related decisions, carry out complex instructions, and the ability to make judgments on complex-work related decisions. [Tr. 591]. Additionally, Ms. Ford found that Plaintiff was moderately limited in her ability to interact appropriately with coworkers and supervisors, but that she was markedly limited in her ability to interact appropriately with the public and respond appropriately to usual work situations and to changes in a routine work setting. [*Id.*].

The ALJ reviewed Ms. Ford's medical source statements, but "gives her opinions little weight as they are too restrictive and not consistent with her own notes or with the other evidence of record." [Tr. 622]. The ALJ noted that Ms. Ford saw Plaintiff for individual therapy from June 2014 through May 2015, as well as that she reported that Plaintiff had situational stressors on several occasions, worked on coping skills to manage depression and anxiety, but that Plaintiff had no success with using the coping skills at times. [*Id.*]. However, the ALJ detailed that Ms. Ford reported that Plaintiff was not compliant with her medications on several occasions, including

---

[3] Plaintiff was a victim of a robbery while working at a fast-food restaurant.

12

that when seen for medication management in April of 2014, Plaintiff reported that she had stopped taking Zoloft; that in June of 2014, Plaintiff reported that she had not filled her prescription for Prozac which was prescribed to her in April; and that in November of 2014, Plaintiff reported doing well with her medications, but in April of 2015, it was noted that Plaintiff had not filled her medications since her receipt of the prescriptions on November 19, 2014. [*Id.*].

Next, the ALJ reviewed that Plaintiff had not been seen at Frontier Mental Health since May of 2015, but that she had been prescribed medications for her complaints and depression from her primary care physician since that time. [*Id.*]. The ALJ noted, however, that treatment records from Plaintiff's primary care provider at Rogersville Medical Center show that she was oriented to person, place, time, and situation, as well as that she had appropriate mood and affect with normal memory. [*Id.*]. Lastly, the ALJ found that Ms. Ford's opinions were not consistent with Mr. Smith's examination findings—which he proceeded to review in great detail. [Tr. 622–23].

Judge Corker noted in the previous disability decision that the ALJ afforded little weight to Ms. Livermore's opinion because Plaintiff was doing well with treatment; that the ALJ afforded little weight to Ms. Ford, Dr. Wright, and Mr. Smith's opinions because Plaintiff was doing well with treatment; and afforded some weight to Dr. Hansmann's opinion. *See Helton v. Comm'r of Soc. Sec. Admin.*, No. 2:16-cv-286-MCLC (E.D. Tenn. Sept. 22, 2017) [Doc. 23 at 11]. However, Judge Corker detailed that "[w]hile there was some evidence that [Plaintiff] did improve with treatment, her improvement was not sustained and may have been complicated by her noncompliance with taking her medication as prescribed." [*Id.*]. Specifically, Judge Corker stated that Plaintiff's "compliance with her medication was sporadic and clearly resulted in adverse effects on her mental state and her presentation at her counseling sessions." [*Id.*]. The Court reviewed Plaintiff's mental health history in great detail, including after her admitting that she was

13

unusually quiet and admitted to suicidal ideation on June 25, 2014, a second therapist made a crisis assessment, but that Plaintiff refused. [*Id.* at 13 (citing Tr. 514)].

More importantly, Judge Corker noted that at Plaintiff's next session on July 29, 2014, she "revelated the trigger for the June episode," including reminding her therapist that she would have to see her brother at her mother's birthday gathering and that her brother had molested her for several years when she was younger. [*Id.* at 14 (citing Tr. 513)]. Judge Corker reviewed that Ms. Ford "wrote that this was the first time Helton had spoken about her experience of childhood sexual abuse," and Plaintiff's "revelation that she was a victim of a pattern of childhood sexual abuse occurred almost [a] year after Dr. Hansmann issued her opinion." [*Id.*].

Ultimately, Judge Corker stated that:

> In this case, significant developments occurred after Dr. Hansmann proffered her opinion. Indeed, after 2013, there was universal agreement among the psychological experts that Helton suffered from severe mental impairments that significantly limited her ability to engage in work related activity. By discounting these experts on the ground that Helton was "doing well with treatment" fails to accurately describe the reality of her worsening condition and certainly fails to acknowledge the extreme oscillation of her mental health status. Indeed, it was after the revelation of her childhood sexual abuse trauma when Wade Smith, Gerry Livermore, and Dr. Wright offered their opinions that Helton had marked limitations in either concentration, persistence and pace and whose psychological condition would interfere with her ability to regularly attend work. Notably, Ford's opinion is consistent with them all.

> Given the significant development in Helton's condition after Dr. Hansmann rendered her opinion, his decision was not "justified" in the weight he afforded the opinions of the Smith, Livermore, Ford, and Dr. Wright, all of whom claim marked impairment. *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012). Given the agreement of all the experts, and the subsequent worsening of Helton's condition, the Court finds the ALJ has in essence substituted his judgment for that of the physicians.

[*Id.* at 17–18]. Therefore, the Court found that "the ALJ's analysis of Helton's mental impairments is not supported by substantial evidence," and "[o]n remand, the ALJ should analyze Helton's

14

mental limitations, including giving due consideration of Ford's opinion as an 'other source' as set forth in 20 C.F.R. § 404.1527(c)." [*Id.* at 18]. Additionally, the Court held that "[i]f the ALJ finds that Helton's lack of improvement has been the result of her failure to take her medication as prescribed, (for which there is evidence) then he shall determine whether her noncompliance with medication is the result of her mental impairment itself." [*Id.* at 19].

### 2. ALJ's Treatment of Medical Opinions

Plaintiff asserts that the ALJ improperly "accepted the opinion of the reviewing psychologist," which was "more than five years old" at the time of the second disability decision, and prior to the consultative examination performed by Mr. Smith. [Doc. 20 at 15]. In essence, Plaintiff's argument revolves on her assertion that the ALJ incorrectly "pointed to no evidence after the Commissioner's initial decision which supported his conclusions." [*Id.*].

First, Plaintiff fails to cite to any case law in support of her argument that the ALJ improperly relied upon medical opinions and evidence prior to the remand of her application. Even after the Court's remand, during the ALJ's second hearing, Plaintiff stated that she was alleging disability starting on January 8, 2013. However, Plaintiff challenges the ALJ's acceptance of Dr. Hansmann's opinion over the subsequent medical opinions of record.

"State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Therefore, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3.

15

In the disability decision, the ALJ accepted Dr. Hansmann's opinion and reviewed how Dr. Wright's opinion was only entitled to some weight because it was inconsistent with Plaintiff's treatment records. "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [will be given] to that medical opinion." 20 C.F.R. § 404.1527(c)(4). Additionally, the ALJ detailed how Mr. Smith's opinion was entitled to some weight, and specifically reviewed how it was inconsistent with Plaintiff's treatment records and Mr. Smith's examination findings. Lastly, the ALJ detailed how Ms. Ford's opinions were inconsistent with both her notes, Plaintiff's treatment records, and Mr. Smith's interview findings. Therefore, contrary to his initial disability decision, the ALJ did not in essence dismiss these opinions based on Plaintiff's improvement with treatment.

However, "before an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record. In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakely*, 581 F.3d at 409). "[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)).

The Sixth Circuit has found that an ALJ satisfied *Blakley* by reviewing the medical evidence that was entered after the nonexamining state agency consultant's opinion and explaining why the consultant's opinion was afforded greater weight despite the subsequent evidence. *Id.*

16

However, in the present case, the nonexamining state agency consultant (Dr. Hansmann) did not review a complete medical record, and the Court cannot find that the ALJ made an independent determination based on all of the medical evidence when the ALJ failed to mention in any detail the "major revelation of past childhood victimization" which occurred after Dr. Hansmann's opinion. *See Helton v. Comm'r of Soc. Sec. Admin.*, No. 2:16-cv-286-MCLC (E.D. Tenn. Sept. 22, 2017) [Doc. 23 at 16]. Moreover, the ALJ failed to discuss the "subsequent worsening" of Plaintiff's condition as identified by Judge Corker. [*Id.* at 18]. The undersigned is particularly troubled by the ALJ's failure to even mention this significant detail in the medical record which was a major emphasis of Judge Corker's earlier decision. Additionally, when finding that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not credible, the ALJ noted that Plaintiff "reported having good relations with her family members." [Tr. 619].

"ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citation and internal quotation marks omitted). "[C]ourts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data." *Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013), *report and recommendation adopted by*, 2013 WL 5676251 (E.D. Mich. Oct. 18, 2013) (collecting cases). Although an ALJ must withstand the temptation to play doctor, he is responsible for considering all the medical opinions of record and "does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering" a claimant's RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

17

However, in the present case, the Court again finds that the ALJ impermissibly made his own medical findings by accepting Dr. Hansmann's opinion and discrediting all other opinions of record who found marked impairments in concentration, persistence, and pace. While the ALJ seemingly included alternative bases for discrediting these opinions other than Plaintiff's improvement, Judge Corker previously detailed "the reality of [Plaintiff's] worsening condition" and "the extreme oscillation of her mental health status." *Helton v. Comm'r of Soc. Sec. Admin.*, No. 2:16-cv-286-MCLC (E.D. Tenn. Sept. 22, 2017) [Doc. 23 at 17]. While the ALJ essentially recited the opinions in the medical record, the Court cannot credit his acceptance of Dr. Hansmann's opinion where he also failed to discuss in any detail Plaintiff's revelation of her past childhood sexual abuse. This omission is particularly consequential where the Court's previous order detailed that Ms. Ford's "report is the only opinion prepared after Helton's crisis issues in spring 2015 relating to Helton revealing her past childhood sexual abuse," and that Ms. Ford "offered an opinion based upon her treatment of Helton during and after the June 2014 crisis session." [*Id.* at 15–17].

This error also bleeds into an alternative basis for finding that the ALJ's disability decision is not supported by substantial evidence, as the ALJ failed to comply with the Court's previous remand order. An ALJ is required to "take any action that is ordered by the Appeals Council." 20 C.F.R. §§ 404.1577, 416.977; *Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 496–97 (6th Cir. 2019) ("When a remand order contains detailed instructions concerning the scope of the remand and the issues to be addressed, 'further proceedings in the trial court or agency from which appeal is taken must be in substantial compliance with such directions; and if the cause is remanded for a specified purpose, any proceedings inconsistent therewith is [sic] error.'") (quoting *Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967)).

18

Here, the Appeals Council remanded Plaintiff's case "to an Administrative Law Judge for further proceedings consistent with the order of the court." [Tr. 634]. The Court, however, finds that the ALJ failed to follow the remand order in the second disability decision and hearing. Ultimately, the Court cannot find substantial compliance with the direction to weigh Ms. Ford's opinion in accordance with the Court's previous order where the ALJ on remand failed to make any reference to the reason Judge Corker largely found the treatment of Ms. Ford's opinions to be improper. On remand, the ALJ failed to address "the significant development" in Plaintiff's condition "after Dr. Hansmann rendered her opinion." *Helton v. Comm'r of Soc. Sec. Admin.*, No. 2:16-cv-286-MCLC (E.D. Tenn. Sept. 22, 2017) [Doc. 23 at 18].[4] While the ALJ offered additional reasons for not adopting Ms. Ford's opinions, as well as the other opinions of record (other than Dr. Hansmann's), the ALJ failed to follow the Appeals Council's remand order.

### 3. Noncompliance with Medication

The Sixth Circuit has cautioned that "ALJ's must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) (citing *Pate–Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)). "[W]here there is no evidence that explains the lack of treatment, an ALJ may properly rely on the lack of treatment as a factor in evaluating a claimant's limitations." *Benson v. Comm'r of Soc. Sec.*, No. 3:19 CV 2804, 2021 WL 804150, at

---

[4] The Court also notes that despite the instruction by Judge Corker that "[i]f the ALJ finds that Helton's lack of improvement has been the result of her failure to take her medication as prescribed," the ALJ subsequently failed to "determine whether her noncompliance with medication is the result of her mental impairment itself." [*Id.* at 19]. However, as detailed below, Plaintiff fails to establish a link between her mental impairments and her failure to follow prescribed treatment.

19

*2 (N.D. Ohio Mar. 2, 2021) (citing *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010)); *see, e.g.*, *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 599 (6th Cir. 2018) (acknowledging the analysis in *White*, "[b]ut in this case there is no evidence that explains Kestel's lack of treatment for over two years, and she offered inconsistent explanations regarding her missed appointments").

In the disability decision, the ALJ found that "[w]hile the record indicates that the claimant continued to experience symptoms of depression and anxiety on occasion, they show that the claimant was not compliant with medications at times."  [Tr. 616].  The ALJ noted that an April 9, 2015 treatment record indicated that Frontier Mental Health had contacted Plaintiff's pharmacy and learned that she had not filled her prescriptions since November 2014.  [*Id.*].  When reviewing Ms. Ford's opinions, the ALJ repeated that Ms. Ford indicated that Plaintiff was not compliant with her medication on several occasions, including that in April of 2014, Plaintiff reported that she had stopped taking Zoloft, and she reported in June of 2014 that she had not filled her prescription for Prozac.  [Tr. 622].

"Accordingly, to establish a severe mental impairment as an acceptable reason excusing a claimant's adherence to a medical regimen including prescription psychiatric medications, the record must contain evidence expressly linking noncompliance with the severe mental impairment.  The justifiability of noncompliance is a step four determination as to which the claimant bears the burden of proof."  *Black v. Comm'r of Soc. Sec.*, No. 1:13-CV-229, 2013 WL 6837193, at *4 (N.D. Ohio Dec. 26, 2013) (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).  "The requisite evidence of that link will preferably appear in an opinion or assessment by a medical source."  *Id.*  Significantly, Plaintiff has failed to point to an evidentiary link between her mental impairments and her failure to take prescribed medications.  *See, e.g.*, *Benson v. Comm'r of Soc. Sec.*, No. 3:19 CV 2804, 2021 WL 804150, at *2 (N.D. Ohio Mar. 2, 2021) ("Here, Plaintiff

20

presents no argument that her mental health symptoms prevented her from seeking treatment, either in her objection or her brief on the merits.").  Lastly, the Court notes a lack of strong evidence in the medical record that Plaintiff's failure to seek treatment for mental health issues was a result of her mental health issues.  For example, while Plaintiff reported that she stopped using Zoloft on April 28, 2014, the treatment note does not indicate a reason.  [Tr. 515].

Therefore, the Court finds that Plaintiff has failed to establish that her mental health symptoms prevented her from following her prescribed treatment.  However, as the Court has already found that Plaintiff's case will be remanded, the ALJ is advised to consider the guidance set forth by the Northern District of Ohio in *Black*:

> Where such evidence does not exist or is unclear, counsel for claimants should request a consultative examination or testimony by a medical expert addressed expressly to the issue of a link between the mental impairment and failure to take prescription medication. Although a referral for a consulting examination and the calling of a medical expert remain within the discretion of the ALJ, a serious argument can be made under certain circumstances that refusal to obtain a further opinion constitutes reversible error given the Sixth Circuit's admonishment in *White* that "a mentally ill person's noncompliance with treatment can be . . . a result of the mental impairment itself and, therefore, neither willful nor without justifiable excuse . . . ."

*Black*, 2013 WL 6837193 at *4.

### 4.    Limitation to Simple, Routine, Unskilled Work

Plaintiff contends that "[i]t has been held that simply limiting a Plaintiff to jobs requiring no more than simple, routine, unskilled work was not adequate to convey moderate limitations in an individual's ability to concentrate, persist or to keep pace."  [Doc. 20 at 19].  Ultimately, the Court will decline to address in detail Plaintiff's argument, as remand of her case will result in a reevaluation of the RFC determination.  However, the Court provides the following guidance.

In *Ealy v. Commissioner of Social Security*, the Sixth Circuit concluded that an RFC and

21

hypothetical question to a VE that included the limitations of "simple repetitive tasks and instruction" failed to accurately represent a medical opinion that assessed limitations of "simple, repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical." 594 F.3d 504, 516 (6th Cir. 2010). As later clarified in *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426 (6th Cir. 2014), the problem in *Ealy* was that the RFC and hypothetical question "truncated the doctor's specific restrictions." *Id.* at 436–37. Distinguishing *Ealy*, the *Smith-Johnson* Court found "the limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability 'to maintain attention and concentration for extended periods'" because "[u]nlike in *Ealy*, Dr. Kriauciunas did not place any *concrete functional limitations* on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks." *Id.* at 437 (emphasis added). Further, the Sixth Circuit has more recently held that "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016).

Plaintiff notes that Mr. Smith opined that Plaintiff was markedly impaired in her ability to maintain concentration and persistence, and Dr. Wright found that Plaintiff was markedly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [Doc. 20 at 19]. However, Plaintiff fails to point to any assessed functional limitations regarding her abilities to maintain concentration, persistence, or pace. Therefore, Plaintiff's argument under *Ealy* does not constitute a basis for remand.

The Court also declines to address Plaintiff's contention that the ALJ failed to properly weight her subjective allegations because Plaintiff solely claims that she "clearly suffers from

22

severe depression after childhood trauma for a number of years, and the [ALJ] failed to properly weigh that testimony, particularly when it is consistent with both the reports of her treating practitioners and the Commissioner's own consulting psychologist." [*Id.* at 20].

## B. ALJ's Physical RFC Determination and Necessity of Consultative Examination

Plaintiff asserts that the ALJ erred by failing to order a physical and mental consultative examination, particularly when the evidence he was going to rely upon was more than five years old." [*Id.* at 16]. Additionally, Plaintiff contends that the ALJ's physical RFC determination is not supported by substantial evidence because consultative examiner Dr. Robert Blaine limited Plaintiff to being on her feet for no more than two hours a day. Plaintiff notes that Judge Corker previously found that the ALJ's RFC from a physical standpoint was supported by substantial evidence, but alleges that "in connection with the remand, the Plaintiff's treating practitioner[ ] opined that [she] had lumbar pain, right upper quadrant pain, wrist and hip pain, edema, headaches and allergies, as well as poorly controlled diabetes, chronic back pain, obesity, hypothyroidism, blurred vision and fibromyalgia and that she was not able to work." [*Id.* at 17].

As Judge Corker previously detailed:

Dr. Blaine examined Helton in June 2013. He diagnosed arthritis, diabetes, hypertension, back pain, carpal tunnel syndrome and hypothyroidism. (Tr. 312). He reported Helton used a cane as needed (which was not prescribed) and that she got on and off the exam table without difficulty. (Tr. 311). Musculoskeletal testing revealed normal rotation and extension in portions of Helton's spine, hips, and knees with limitations in other areas. (Tr. 311-12). Her remaining joints were normal. (*Id.*) Neurological testing showed her sensation was intact except for a decrease in one foot. (*Id.*) Her various strengths, including grip, were assessed at four of five. (Tr. 312). Flexor and extensor strength were not limited and the straight leg raise was negative. Her station, gait, single leg stand, and heel walk were normal, but the tandem walk showed poor balance and mechanical difficulties. (*Id.*) She could not toe walk. (*Id.*). Dr. Blaine concluded:

23

> [Helton] could stand or walk for 2 hours in an 8-hour day. She could
> lift and carry up to about 15 or 20 pounds infrequently. She could
> sit for 8 hours with reasonable rest breaks. She is capable of
> handling her own affairs if approved for disability. The medical
> evidence of record provided by the DDS was reviewed and
> considered in the overall assessment of the patient.

(Tr. 312). This reflects elements of light and sedentary RFCs. 20 C.F.R. §§
404.1567 and 404.967.

*Helton v. Comm'r of Soc. Sec. Admin.*, No. 2:16-cv-286-MCLC (E.D. Tenn. Sept. 22, 2017) [Doc.
23 at 6–7].

In the disability decision at issue in the present case, the ALJ reviewed Dr. Blaine's opinion
and assigned it "some weight as his opinion is partially consistent" with the RFC determination.
[Tr. 620]. The ALJ noted that Dr. Blaine's opinion that Plaintiff could stand and walk for only
two hours in an eight-hour day was too restrictive and not supported by the other evidence of
record. [*Id.*]. Additionally, the ALJ detailed that Dr. Blaine only examined Plaintiff one time, and
his opinion was "not consistent with treatment records, which show only minimal treatment and
minimal objective findings on examinations and imaging studies during the period at issue." [*Id.*].
The ALJ also stated that x-rays of the lumbar spine and right hip and an MRI of the lumbar spine
showed only mild findings, that Plaintiff has been maintained on medications, and that she has not
sought nor required further treatment or referral to any specialists for her physical complaints
during the period at issue.

The ALJ also considered the opinions of the nonexamining state agency physicians, who
opined that Plaintiff could perform medium work activity with frequent climbing ramps and stairs,
balancing, stooping, kneeling, crouching, and crawling, but never climbing ladders, ropes, or
scaffolds and limitations to frequent handling and fingering bilaterally. [Tr. 619]. The ALJ
afforded these opinions great weight, as they were partially consistent with the ALJ's

24

determination that Plaintiff could never climb ladders, ropes, or scaffolds, and that she could frequently handle and finger bilaterally. Additionally, the ALJ found that Plaintiff was further limited to "light work activity with occasional postural activities, but no climbing ladders, ropes, or scaffolds and that she should avoid even moderate exposure to hazards." [*Id.*].

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). An ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a "treating source." 20 C.F.R. § 416.927(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant.").

Ultimately, the Court finds that the ALJ appropriately considered the medical opinions with respect to Plaintiff's physical impairments, and the Court agrees with Judge Corker's earlier finding that "[t]he light work RFC found by the ALJ falls between the [s]tate agency reviewer's medium RFC and Dr. Blaine's sedentary/light recommendation and reflects the limited weight afforded in compliance with the ALJ's charge." *Helton v. Comm'r of Soc. Sec. Admin.*, No. 2:16-cv-286-MCLC (E.D. Tenn. Sept. 22, 2017) [Doc. 23 at 8]. Plaintiff largely does not challenge the weight afforded to Dr. Blaine's opinion; rather, she claims that her treating practitioner, Danny

Wester, PA-C, stated on June 13, 2018 that Plaintiff was totally disabled and unable to perform any work and suffered from the physical impairments detailed above.

However, in the disability decision, the ALJ reviewed that Mr. Wester's opinion was entitled to little weight because it was not consistent with his treatment notes or the evidence of record, as well as that it contained an opinion on an issue reserved to the Commissioner under Social Security Ruling 96-5p. [Tr. 623]. Ultimately, the Court finds that the ALJ appropriately reviewed Dr. Blaine's opinion and the RFC determination related to Plaintiff's physical impairments is supported by substantial evidence.

Next, Plaintiff claims that the ALJ erred by failing to order a physical and mental consultative examination on remand. The Court notes that Plaintiff possesses the burden to demonstrate that she suffers from a disabling condition. *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) (citing 20 C.F.R. § 404.1512(a)); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant.") (internal citation omitted).

Further, the applicable regulations do not require an ALJ to refer a claimant to a consultative specialist. *See id.* at 214. The regulations provide that the agency "may ask [the claimant] to have one or more physical or mental examinations or tests" if the claimant's "medical sources cannot or will not give us sufficient medical evidence" to determine whether the claimant is disabled. 20 C.F.R. § 416.917. Additionally, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001); *see Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 n.3 (6th Cir. 2009) ("[A]n ALJ is required to re-contact a treating physician only when the information

26

received is inadequate to reach a determination on claimant's disability status[.]").  It is not error to fail to obtain additional evidence where the record contains a "considerable amount of evidence" pertaining to the claimant's limitations.  *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013).

Here, the Court declines to state whether the ALJ erred by failing to order a consultative examination.  Reconsideration of Plaintiff's case on remand may require additional assessments, particularly in light of the current procedural posture of Plaintiff's application for disability insurance benefits and supplemental security income.

### D.     Remand Versus Award of Benefits

Plaintiff asserts that "the evidence is overwhelming that [she] is more impaired from a mental standpoint than found by the [ALJ], as both [of her] treating mental health sources, the Commissioner's examining psychologist, and the psychologist who reviewed the case after the examining psychologist were of the opinion that the Plaintiff has marked limitations in her ability to maintain attention and persistence over a full workday or workweek."  [Doc. 20 at 20].  Therefore, Plaintiff argues that "[s]ince this claim has been pending for more than seven years, and the evidence is overwhelming that the Plaintiff has marked limitations in many mental areas . . . reversal rather than remand is appropriate in this case as there is an adequate record, the Commissioner's decision denying benefits is clearly erroneous, proof of disability is overwhelming, and evidence to the contrary is lacking."  [*Id.*].

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately

establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (internal citations omitted). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.* (citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)).

Ultimately, while the Court is sympathetic that an order of remand in the present case will regrettably postpone this matter and Plaintiff's claim for disability benefits yet again, the identified inconsistencies in the ALJ's evaluation of the medical opinions constitutes potential "evidence to the contrary" of Plaintiff's disability. *Id.* Although the Court takes no opinion on Plaintiff's disability status, it cannot find that "the proof of disability is overwhelming" at this time. *Id.*; *see, e.g.*, *Miller v. Berryhill*, No. 3:17-CV-01439, 2019 WL 1429259, at *16 (M.D. Tenn. Mar. 29, 2019) ("In this case, while the court finds that the Commissioner's decision is not supported by substantial evidence and the proof of disability is certainly strong, the court will remand to the Commissioner for the purpose of appropriately weighing the evidence in the record.").

While the Court does not find bias on behalf of the ALJ, "[u]pon remand, the [Appeals Council] shall assign the matter to an ALJ who has not heard this matter before." *DaSilva v. Saul*, No. 19-CV-12154-ADB, 2020 WL 6743584, at *8 (D. Mass. Nov. 17, 2020); *see, e.g.*, *Muniz v. Berryhill*, No. 16-cv-00303, 2017 WL 4083152, at *3 (D.N.H. Sept. 15, 2017) ("In light of the fact that the ALJ has reviewed [the claimant's] case twice, the court believes that this is a case where 'a fresh look by another ALJ upon remand would be beneficial.'") (quoting *Simpson v. Colvin*, 2 F. Supp. 3d 81, 93 (D. Mass. 2014)). The Appeals Council shall direct the newly-assigned ALJ to consider the issues raised in this remand order as well as the prior remand, including appropriately considering the medical opinions of record and evidence related to Plaintiff's mental impairments

28

after Dr. Hansmann's opinion.  If warranted, the ALJ shall offer Plaintiff an opportunity for a hearing and to take any further action necessary to complete the administrative record prior to resolving the issues discussed above and issuing a new decision.  Additionally, due to the necessity of a second order of remand, the Court instructs the Appeals Council that Plaintiff's application should be considered on an expedited basis before a new ALJ, if necessary.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 19**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 21**] will be **DENIED**.   This case will be **REMANDED** to the SSA in accordance with this Opinion.

ORDER ACCORDINGLY.

United States Magistrate Judge

29